UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EMIL FLUTE and PATRICIA FLUTE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 4:18-CV-04112-RAL<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

Emil Flute and Patricia Flute (collectively Plaintiffs) have sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, alleging that the negligence of the Podiatry Clinic at the Omaha-Winnebago Public Health Service Hospital (Winnebago Hospital), through its federal employees and agents, during its treatment of Emil, caused injuries to Emil, loss of consortium, and negligent infliction of emotional distress. Doc. 1. The United States filed an answer denying liability, Doc. 6, and then filed a motion to dismiss for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), Doc. 8. Plaintiffs oppose this motion, Doc. 16, and the United States submitted additional materials outside the pleadings. Docs. 9–10, 14, 24. For the reasons explained below, this Court grants in part and denies in part the United States' motion to dismiss.

I.     **Facts**

The United States seeks to provide, administer, and oversee health services to members of federally recognized tribes through Indian Health Services (IHS), which is an agency within the

Department of Health and Human Services (HHS). Doc. 1 at ¶ 4. The Winnebago Hospital is part of IHS with responsibility for providing health services to American Indians. Doc. 1 at ¶ 4.

IHS and AB Staffing Solutions, LLC (Staffing Solutions) entered into a contract for podiatry services at the Winnebago Hospital, in Winnebago, Nebraska, to begin April 1, 2017, until a date to be determined in the future. Doc. 9 at ¶ 2; Doc. 9-1 at 1. The contract's scope of work provides that "[t]he contractor is subject to the supervision and direction of the Clinical Director or Designee." Doc. 9 at ¶ 5; Doc. 9-2 at 1. The contract also incorporated Federal Acquisitions Regulations, including 48 C.F.R. § 52.237-7 titled "Indemnification and Medical Liability Insurance." Doc. 9-3 at 1. Section (a) of that regulation states:

> It is expressly agreed and understood that this is a nonpersonal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments. The Contractor shall be solely liable for and expressly agrees to indemnify the Government with respect to any liability producing acts or omissions by it or by its employees or agents. The Contractor shall maintain during the term of this contract liability insurance issued by a responsible insurance carrier . . . .

48 C.F.R. § 52.237-7.

The podiatry services contract also contains a document titled "CONTRACTOR'S PERFORMANCE CONDITIONS 85 RESPONSIBILITIES." Doc. 9-4. The contract states that the contractor is responsible for reporting all taxes, providing his own transportation to work, his health and retirement benefits, maintaining satisfactory standards of competence, conduct, appearance, and integrity, and notifying the supervisor/director if he will be late, ill, or unable to work. Doc. 9-4. Additionally, the contract provides that the "Contractor earns no leave and is compensated only for hours actually worked at the agreed compensated rate." Doc. 9-4.

2

Emil received care at the Podiatry Clinic at the Winnebago Hospital between April 17, 2017 and June 2, 2017. Doc. 1 at ¶ 13; Doc. 1-5 at 1. According to the Plaintiffs, during this time frame, "a podiatry instrument was not properly sterilized between procedures, raising concerns of blood-borne diseases potentially being transferred from patient to patient . . . . The podiatrist responsible for the error has since been terminated . . . . [This was discovered when a] nurse noticed the physician had improperly sterilized the instrument."[1] Doc. 1-5 at 5–6. On or about August of 2017, Emil received a letter from HHS informing him that the medical instruments used during his visits may not have been properly sterilized and Emil may have been infected with diseases including Hepatitis B, Hepatitis C, or Human Immunodeficiency Virus. Doc. 1 at ¶ 15. Patricia, Emil's wife, learned that she too may be infected. Doc. 1 at ¶ 16.

Plaintiffs presented an administrative claim for their injuries, pain and suffering, and emotional distress to HHS in February 2018. Doc. 1 at ¶ 5. In May 2018, Plaintiffs' administrative claim was denied. Doc. 1 at ¶ 6. In September 2018, Plaintiffs filed this claim under the FTCA, requesting damages for Emil's alleged injuries, loss of consortium for Patricia, negligent infliction of emotional distress for both Plaintiffs, costs and attorney's fees, any and all other remedies provided pursuant to the FTCA, as well as any other relief this Court may order. Doc. 1. Plaintiffs attached to their complaint a HHS letter denying Plaintiffs' claims, certain medical records, a letter from HHS to Plaintiffs informing them that a podiatry instrument used on Emil may not have been properly sterilized, and news articles. Docs. 1-2, 1-3, 1-4, 1-5.

The United States answered the complaint, denying that its employees and agents failed to act with due care and diligence at all relevant times and denying that the United States proximately caused any injury to Plaintiffs. Doc. 6 at ¶¶ 42–43. Additionally, the United States asserted that

---

[1] These statements are taken from a news article the Plaintiffs filed with the complaint.

Plaintiffs' alleged injuries were caused solely by the negligence of a third party—Dr. John Horlebein—who was not a federal employee for purposes of FTCA liability, such that this Court does not have subject-matter jurisdiction over the Plaintiffs' complaint. Doc. 6 at ¶ 45. The United States then filed a motion to dismiss. Doc. 8.

With its motion to dismiss, the United States filed a Declaration of the Chief of the Contracting Office at IHS and attached various documents to provide information about the contract between IHS and Staffing Solutions for podiatry services. Doc. 9. The United States also filed a Declaration of the Clinical Director for the Lockport Service Unit at IHS and attached the Omaha-Winnebago Medical Staff Rules and Regulations of the Great Plains IHS. Doc. 10. Additionally, the United States filed some of Emil's medical records. Doc. 14. The Plaintiffs' response to the motion to dismiss argued that the complaint was based on the actions of "Winnebago Indian Health Services and All [sic] of its employees and supervisors who are in charge of properly sanitizing the hospital instruments," and not based on just one doctor's actions. Doc. 16 at 3. Plaintiffs argue that discovery is required to determine whose negligent acts are responsible for the alleged improper sanitation of podiatry instruments. Doc. 16 at 7. Additionally, Plaintiffs argue that if this Court relies upon materials outside the pleadings in ruling upon the United States' motion, it must convert this into a motion for summary judgment, upon which "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Doc. 16 at 6 (quoting Fed. R. Civ. P. 12(d)). Lastly, Plaintiffs argue that the motion to dismiss was not timely filed. Doc. 16 at 7. The United States then filed a reply along with an additional supporting document. Docs. 23–24.

## II. Motion to Dismiss Standards under Rule 12(b)(1) and Rule 12(h)(3)

The United States asserts lack of federal court subject-matter jurisdiction and has moved to dismiss under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. Under Rule 12(h)(3),"[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Indeed, a federal court has the responsibility to consider the question of subject-matter jurisdiction *sua sponte* even if not raised by the parties and must dismiss any action where the court lacks jurisdiction. Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011).

A Rule 12(h)(3) motion to dismiss is analyzed under the same standards as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Gates v. Black Hills Health Care Sys. (BHHCS), 997 F. Supp. 2d 1024, 1029 (D.S.D. 2014) (citing Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992)). A Rule 12(h)(3) motion differs from a Rule 12(b)(1) motion only in that it can be brought at any time, by any party or interested individual, or considered *sua sponte* by the court; a Rule 12(b)(1) motion by contrast must be made before any responsive pleading. See Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); 5B Charles Alan Wright et al., Federal Practice & Procedure § 1350 (3d ed.).

A Rule 12(b)(1) challenge to subject-matter jurisdiction can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject-matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule

5

12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). A facial challenge to federal jurisdiction limits the court; the court must view the allegations in the light most favorable to the plaintiffs. See Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In a factual challenge, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730 (quoting Mortensen, 549 F.2d at 891). Evidentiary

The United States has submitted evidence outside of the initial pleadings in support of its Rule 12(b)(1) and 12(h)(3) motion, mounting a factual challenge to this Court's subject-matter jurisdiction by contending that the doctor who allegedly improperly sterilized the podiatry tool, Dr. Horlebein, is not a federal employee, but rather an independent contractor under a contract for podiatry services between IHS and Staffing Solutions. Doc. 13 at 2. This Court can thus "look outside the pleadings in order to determine whether subject matter jurisdiction exists." Green

6

Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005); see also Lightning Fire v. United States, No. 3:15-CV-03015-RAL, 2017 WL 1944105, at *2–3 (D.S.D. May 9, 2017). By bringing suit and seeking to establish jurisdiction, Plaintiffs retains the burden of showing that this Court has jurisdiction. See Great Rivers Habitat Alliance v. FEMA, 615 F.3d 985, 988 (8th Cir. 2010); Riley v. United States, 486 F.3d 1030, 1031 (8th Cir. 2007).

In considering the supporting documents attached by both parties, this Court is not converting the United States' Rule 12(b)(1) and 12(h)(3) motion into a Rule 56 motion for summary judgment, where different standards and burdens apply. Instead, this Court considers only the material relevant to the jurisdictional question regarding whether Dr. Horlebein is considered a federal employee for FTCA liability and if he alone was responsible for allegedly improperly sterilizing the instrument. This Court must resolve the United States' motion to dismiss under Rule 12(b)(1) and 12(h)(3) before considering the merits of the case because if this Court lacks the jurisdiction to hear the claim, it cannot proceed any further. See Gesinger v. Burwell, 210 F. Supp. 3d 1177, 1186 (D.S.D. 2016) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)).

### III. Discussion

#### A. Waiver Argument

Plaintiffs argue that the United States has waived its objection to subject-matter jurisdiction because a motion to dismiss must be filed pre-answer under Rule 12(b). Doc. 16 at 6. However, the United States also filed the motion to dismiss pursuant to Rule 12(h)(3). Rule 12(h)(3) motions differ from a Rule 12(b)(1) motions in that they can be brought at any time, by any party or interested individual, or considered *sua sponte* by the court. See Fed. R. Civ. P. 12(h)(3); Federal Practice & Procedure § 1350. The United States has not waived its objection to subject-matter

7

jurisdiction because lack of subject-matter jurisdiction based on sovereign immunity pursuant to Rule 12(h)(3) is not a waivable defense.

### B. FTCA Overview and "Employee of the Government" Standard

The United States argues that this Court lacks jurisdiction under Rule 12(b)(1) and Rule 12(h)(3) because the United States has not waived its sovereign immunity for claims based on independent contractor's negligence and Plaintiffs have not established any independent basis for waiver of sovereign immunity. Doc. 13 at 2. "The United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); see United States v. North Dakota, 650 F.2d 911, 918 n.17 (8th Cir. 1981). Congress has the ability to waive the United States' sovereign immunity, and "prescribe the terms and conditions on which [the United States] consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (quoting Beers v. Arkansas, 61 U.S. 527, 529 (1857)). In a case against the United States, the waiver of sovereign immunity defines the bounds of a court's jurisdiction. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); United States v. Navajo Nation, 537 U.S. 488, 502 (2003) (explaining that the United States' consent to suit is a "prerequisite for jurisdiction" (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)). "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, . . . together with a claim falling within the terms of the waiver." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). Any waiver "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

In 1946, Congress passed the FTCA, which makes the United States "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976). The FTCA thus waives, in a limited fashion, the sovereign immunity of the United States. See Mader, 654 F.3d at 797. The FTCA was designed both to avoid the injustice of "having meritorious claims hitherto barred by sovereign immunity," and to avoid the additional burden that Congress had of "investigating and passing upon private bills seeking individual relief." United States v. Muniz, 374 U.S. 150, 154 (1963). As relevant to this case, the FTCA waives sovereign immunity for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[T]he FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995).

Where an act under the FTCA occurs on Indian land, the "law of the place" is considered to be the state within which the land is located. LaFramboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006); see also Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."). Because Plaintiffs' claims arise out of conduct that occurred in Nebraska, the substantive law of Nebraska governs this action. Thus, for this Court to have jurisdiction over Plaintiffs' claims, they must be cognizable under Nebraska law. See Eubank v. Kansas City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010) ("If a private person, under like circumstances, would be liable under the substantive law of the State where the act or omission occurred, then the FTCA waives sovereign


immunity."). That is, Plaintiffs' claims must be such that the United States, if a private person under similar circumstances, "would be liable for the same conduct in [Nebraska]." Green Acres Enters., Inc., 418 F.3d at 856.

The main issue presented by the United States' motion to dismiss for lack of subject-matter jurisdiction is whether Dr. Horlebein is a federal employee for purposes of FTCA liability. As defined in the FTCA, an "employee of the government" includes (1) "officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation," and (2) "any officer or employee of a Federal public defender organization." 28 U.S.C. § 2671. The question in this case is whether Dr. Horlebein is considered either an "employee[] of any federal agency," or a "person[] acting on behalf of a federal agency in an official capacity." Id. The FTCA specifically exempts independent contractors from liability. See id. (noting that "federal agency" within the FTCA "does not include any contractor with the United States"). Whether an individual is a federal employee or independent contractor under the FTCA is a question of federal law. See Logue v. United States, 412 U.S. 521, 527 (1973).

In differentiating federal employees from independent contractors, the Supreme Court has stated that "[a] critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" Orleans, 425 U.S. at 814 (quoting Logue, 412 U.S. at 528). "The [Supreme Court has] emphasized that federal funding or policing of federal standards and regulations does not create employee status. The question to be answered is whether 'day-to-day operations are supervised by the Federal

Government.'" Bernie v. United States, 712 F.2d 1271, 1273 (8th Cir. 1983) (internal citations removed) (quoting Orleans, 425 U.S. at 815); see Knudsen v. United States, 254 F.3d 747, 750 (8th Cir. 2001) (Courts must "evaluate the extent to which the government has the power to supervise the individual's day-to-day operations." (citing Orleans, 425 U.S. at 814)).

In Bernie, the Eighth Circuit determined that two physicians treating IHS patients were independent contractors and not federal employees because they were employed by separate medical entities, and those entities contracted with the IHS for services and paid the physicians their salaries. Bernie, 712 F.2d at 1273. Because "IHS did not exercise control over nor dictate medical judgment" during the provision of health services, the physicians were deemed not to be federal employees. Id.; see also Knudsen, 254 F.3d at 750–51 (affirming district court decision that mental health counselor was an independent contractor, rather than an employee of Veterans Affairs for FTCA purposes, because the counselor "was not subject to any day-to-day control by the VA and was told not to maintain records for the VA's review," and the fact that Congress "expected the VA to insure that quality work was done with government funds" did not change employee's status); Summa v. United States, No. 90-2140, 1991 WL 114638, at *3 (10th Cir. June 25, 1991) (tribal employee implementing a Summer Youth Employment Training Program funded under the federal Job Training Partnership Act was not a federal employee under the FTCA because "the federal government did not supervise the day-to-day operations of the tribal program" and regulations governing program specifically stated "Participants shall not be deemed Federal employees"); Coffey v. United States, 906 F. Supp. 2d 1114, 1165 (D.N.M. 2012) (finding that local detention center was independent contractor, not federal agency, where it provided care for American Indian inmates, but the procurement contract did not "control the detailed physical conduct" of the detention center, and although the detention center was required to comply with

federal regulations and requirements, it had the ability to "decide for itself" how to comply with those regulations and requirements).

Dr. Horlebein is an independent contractor because he was not subject to any day-to-day control by IHS. IHS did not provide daily supervision nor did it control Dr. Horlebein's right to exercise independent medical judgment. First, the podiatry services contract explicitly states that Staffing Solutions and its employees are independent contractors, not federal employees. See Doc. 9-3 at 1; 48 C.F.R. § 52.237-7. While the contract's scope of work provides that "[t]he contractor is subject to the supervision and direction of the Clinical Director or Designee," Doc. 9 at ¶ 5; Doc. 9-2 at 1, Dr. Cantu, the Clinical Director at that time, did not exercise direct control over Dr. Horlebein's day-to-day performance of the contract or over the professional aspects of the podiatry services rendered, Doc. 10 at ¶¶ 5, 10; Doc. 9-2 at 1; see Knudsen, 254 F.3d at 751 ("[W]e are unconvinced that Congress intended to transform independent contractors into employees merely because it expected the VA to insure that quality work was done with government funds."). Similar to Bernie where "IHS did not exercise control over nor dictate [the contract-physicians]'s medical judgment in his treatment of patients," Bernie, 712 F.2d at 1273, Dr. Horlebein retained the ability to use his independent, professional medical judgment over his services rendered, including examination, diagnosis, treatment planning, follow-up, and consultation of podiatry patients and all other professional aspects of the podiatry treatments he provided to patients, Doc. 9-2 at 1; Doc. 10 at ¶ 11; see Doc. 9-3 at 1; 48 C.F.R. § 52.237-7. Additionally, Dr. Horlebein retained the discretion to determine the four days within Monday through Friday that he worked, Doc. 9-2 at 1, Dr. Cantu did not have the power to hire or fire Dr. Horlebein, Doc. 10 at ¶ 12, and the Bylaws treat physician contractors differently than physicians employed by IHS, Doc. 10 at ¶ 6. For example, Dr. Horlebein was not required to attend medical staff meetings. Doc. 10-1 at 5–6. In

12

short, Dr. Horlebein was an independent contractor and not a federal employee. Therefore, this Court lacks subject-matter jurisdiction under the FTCA over actions outlined in the complaint attributable to Dr. Horlebein.

Next, Plaintiffs argue that Dr. Cantu is liable for Dr. Horlebein's actions under a negligent supervision theory. Part of what makes Dr. Horlebein an independent contractor, an issue Plaintiffs ultimately do not seem to contest, is that the level of supervision over him does not rise to a level sufficient to characterize him as an employee. Jurisdiction over this case requires the United States unequivocally waiving sovereign immunity, see White Mountain Apache Tribe, 537 U.S. at 472, as well as Nebraska law that, if the United States were a private person, it would be liable under Nebraska law, 28 U.S.C. § 1346(b)(1). Plaintiffs carry the burden of establishing jurisdiction. Plaintiffs cite no Nebraska statutes or case law—nor has this Court found any—to support a cause of action for a tort of negligent supervision of an independent contractor under Nebraska law.[2] See Barnes v. United States, 448 F.3d 1065, 1067 (8th Cir. 2006) ("[T]he relevant question is whether the government's conduct was such that a private individual under like circumstances would be liable under state law."); Kirchmann v. United States, 8 F.3d 1273, 1275 (8th Cir. 1993) (affirming dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) because the entity's status as an independent contractor precluded imputed liability on behalf of the United States).

The United States does not waive sovereign immunity for acts by independent contractors. See 28 U.S.C. § 2671. Even if it could be argued that it is ambiguous whether the United States

---

[2] Plaintiffs instead incorrectly assume South Dakota law to be the "law of the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1); see, e.g., Doc. 1 at ¶ 29 ("Under South Dakota law, an unexcused violation of a statute, city ordinance, or administrative rule enacted to promote the safety of the public constitutes *negligence per se* and such violation is the proximate cause of the accident and the injuries to Emil Flute.")

13

has waived sovereign immunity for negligent supervision of independent contractor claims, the FTCA waiver is strictly construed with all ambiguities resolved in favor of the United States. See Williams, 50 F.3d at 305. The Plaintiffs have not met their burden of establishing jurisdiction for alleged negligent supervision of Dr. Horlebein.

Plaintiffs argue that the complaint is brought against "Winnebago Indian Health Services and All [sic] of its employees and supervisors who are in charge of properly sanitizing the hospital instruments. Clearly it is not the responsibility of each physician at the Winnebago Indian Health Services to sanitize their own medical equipment." Doc. 16 at 3. The Plaintiffs' own exhibit attached to the complaint suggests that it was Dr. Horlebein's responsibility to sterilize the instruments between patients that allegedly injured Emil. According to a news article filed by Plaintiffs in support of their complaint, "[b]etween April 17 and June 2, a podiatry instrument was not properly sterilized between procedures, raising concerns of blood-borne diseases potentially being transferred from patient to patient, according to the hospital. The podiatrist responsible for the error has since been terminated . . . . [This was discovered when a] nurse noticed *the physician* had improperly sterilized the instrument." Doc. 1-5 at 5–6 (emphasis added). Plaintiffs have the burden of establishing that this Court has subject-matter jurisdiction over this case and their own filing, albeit hearsay, could be read to mean that the independent contractor committed the alleged tort and thus that this Court lacks jurisdiction. The Plaintiffs nevertheless urge this Court to read the news article to support the factual assertion that sterilization technicians were responsible for sanitizing instruments. Plaintiffs argue "[u]ltimately, a nurse noticed that the instruments were not being properly sterilized. (See, Complaint Exhibit 5)." Doc. 16 at 4. However, the statement in the news article is "[a] nurse noticed *the physician* had improperly sterilized the instrument." Doc.

1-5 at 5–6. "The physician" the article is referring to is Dr. Horlebein, not a "sterilization technician" as Plaintiffs suggest. See doc. 16 at 4.

This Court is uncomfortable relying on a news article as a basis for deciding whether federal subject-matter jurisdiction exists. Turning to other material submitted on the subject, a question of fact remains about whose responsibility it was, IHS's or Dr. Horlebein's, for sanitizing the instrument in question. The contract between IHS and Staffing Solutions states: "IHS shall provide nursing staff to prepare patients for examination, and support the patient plan of care." Doc. 9-1 at 2. Additionally, the contract contains the following two provisions:

> Government Furnished Property, Facilities and Services:
>
> The service unit shall provide the contractor the following:
> . . .
> All medical and non-medical equipment and supplies used by the service unit facility for the care and management of patients.
> . . .
>
> Contractor-provided equipment:
>
> The Indian Health Service does not anticipate a need for contractor furnished equipment. However, the Clinical Director may allow any instrument or piece of equipment specifically preferred or requested by the contractor after approval.

Doc. 9-2 at 2. Dr. Horlebein was not working in isolation from IHS employees. Someone other than himself may have been responsible or shared responsibility for properly sanitizing the podiatry instrument. Perhaps this instrument was of the type that was to be disposed of after each patient and IHS supplied a new instrument between patients, making IHS responsible for sanitation. Perhaps Dr. Horlebein was using the same podiatry instrument on all the patients without disposing it or obtaining a new instrument, in which case he might be the only one responsible for its sanitation. Perhaps some other explanation exists for the lack of proper sanitation. This Court finds itself left to speculate as to which party improperly sterilized the

podiatry instrument and declines to rely on an interpretation news article to determine whether the United States does or does not have sovereign immunity for these actions.

Discovery has yet to be conducted and the United States and Dr. Horlebein hold the facts necessary to determine if this Court has jurisdiction. Because sovereign immunity might preclude suit under the FTCA, this Court concludes that limited jurisdictional discovery is appropriate, confined to the sole issue of whose responsibility it was to properly sterilize podiatry instrument used by Dr. Horlebein at the Winnebago Hospital on Emil and who allegedly improperly sterilized the podiatry instrument. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion . . . ."); Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995) (If the United States "possess[es] sovereign immunity, then the district court [has] no jurisdiction to hear [plaintiff's claims]."). The parties shall have 120 days to conduct such discovery. If Plaintiffs fail to present evidence that someone other than Dr. Horlebein had responsibility for properly sterilizing the podiatry instrument used on Emil and improperly sterilized the instrument at the Podiatry Clinic, the case will be dismissed for lack of subject-matter jurisdiction.

## IV. Order and Conclusion

For the reasons explained above, it is hereby

ORDERED that the Defendant's motion to dismiss for lack of subject-matter jurisdiction, Doc. 8, is granted with respect to actions of the independent contractor Dr. Horlebein and is denied without prejudice to actions relating to the improper sterilization claim attributable to any federal employees. It is further

ORDERED that Plaintiffs are allowed 120 days to conduct discovery limited to the responsibility to sterilize any podiatry instrument used by Dr. Horlebein on Emil and alleged failure to properly sterilize the podiatry instrument.

DATED this 24th day of July, 2019.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE